**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1.      I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006.  As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States.  I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters.  Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2.      The investigation described herein reveals that, on or about Thursday, May 21, 2026, **Clifon FERRERA-CESPEDES,** was found in the United States, upon being encountered, at or near San Juan, Puerto Rico, while present in the United States illegally, and after having been previously removed from the United States.  Therefore, this Affidavit is made in support of a Criminal Complaint against **Clifon FERRERA-CESPEDES** based on violation of **Title *8, United States Code,* Sections 1326(a) & (b)(2),** re-entering the United States after being previously deported or removed subsequent to an aggravated felony conviction.

3.      I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter.  This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

1

**PROBABLE CAUSE**

4.    On or about Thursday, May 21, 2026, at approximately 05:49 a.m., Ramey Sector Border Patrol Agents (BPAs) were conducting roving patrol operations at or near the area of Colton Street in Bo. Obrero in San Juan, Puerto Rico. This area is known for frequent drugs and immigrant smuggling activity.

5.    During patrol, BPAs observed a subject standing on the side of a public roadway.

6.    As agents drove past the subject's location, the subject looked directly towards the Border Patrol vehicle and appeared startled by the presence of law enforcement.

7.    Based on training and experience, BPAs recognized this type of behavior as consistent with individuals attempting to avoid contact with law enforcement.

8.    BPAs exited the vehicle to conduct a consensual encounter with the subject.

9.    Upon observing the uniformed Border Patrol Agents approaching him, the subject immediately fled on foot in an apparent attempt to evade law enforcement actions, detection & arrest.

10.    After a brief foot pursuit, BPAs successfully apprehended the subject, who was later identified as **Clifon FERRERA-CESPEDES ("FERRERA")** without further incident.

11.    Following his apprehension, BPAs identified themselves as immigration officers.

12.    BPAs questioned **FERRERA** as to his citizenship and nationality.

13.    **FERRERA** freely admitted to being a citizen & national of the Dominican Republic unlawfully present in the United States.

14.    At the time **FERRERA** was arrested and transported to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico for further investigation, processing & removal proceedings.

15.     Once at Ramey Station, **FERRERA's** photograph and fingerprints were taken and entered into different law enforcement database systems.

16.     Record checks yielded positive results, revealing that **FERRERA** has prior immigration and criminal histories described below:

(a)     On September 1, 1995, **FERRERA** illegally entered the United States at or near San Juan, Puerto Rico.

(b)     On March 10, 1998, **FERRERA** adjusted his status to that of a conditional lawful permanent resident (CR6), in San Juan, Puerto Rico.

(c)     On October 2, 2006, **FERRERA** obtained lawful permanent resident status (LPR) after the conditions of his permanent residence were removed.

(d)     By April 2015, **FERRERA** was part of an ongoing investigation by agents of the Drug Enforcement Administration (DEA) and the Santo Domingo Country Office, of a Drug Trafficking Organization (DTO) based in the Dominican Republic that smuggled drug loads to Puerto Rico for further distribution.  As part of the investigation, it was learned that this organization had a member based in Puerto Rico named **Clifon FERRERA-CESPEDES**.

(e)     On July 10, 2015, **FERRERA** was arrested by DEA.

(f)     On July 11, 2015, **FERRERA** was criminally charged for Title 21 USC Sections 841 & 846 – Conspiracy to Possess with Intent to Distribute five (5) kilograms or more of a mixture of substance containing a detectable amount of cocaine, a Schedule II, Narcotic Drug Controlled Substance and presented for Initial Hearing before Honorable Magistrate Judge Marcos E. López.

(g)    On May 25, 2016, **FERRERA** pleaded guilty to Title 21 U.S.C. § 841(a)(1) – Conspiracy to Possess with Intent to Distribute Cocaine.

(h)    On October 02, 2016, **FERRERA** was convicted and sentenced to thirty (30) months imprisonment to be followed by a term of supervised release term of four (4) years.

(i)    After serving his term of imprisonment, on September 10, 2018, **FERRERA** was encountered by immigration authorities under the Criminal Alien Program by Immigration & Customs Enforcement (ICE) while incarcerated within the Moshannon Valley Federal Correctional Institution, Phillipsburg,

(j)    On November 19, 2018, **FERRERA** was placed in removal proceedings with the issuance of a Notice to Appear charged as an aggravated felon convicted of a drug trafficking offense.

(k)    On December 26, 2018, an Immigration Judge issued an Order of Removal, ordering FERRERA be removed from the United States to the Dominican Republic, and thus terminating his LPR status.

(l)    On January 22, 2019, **FERRERA** was physically removed from the United States to the Dominican Republic from the Port of Alexandria, Louisiana.

17.    Border Patrol Agents advised **FERRERA** of his right to legal representation and his right to speak with the Consular Officer of his native country, the Dominican Republic.

18.    **FERRERA** was found in, after having re-entered the United States at a place other than a designated Port of Entry.

4

19.    **FERRERA** is a national and citizen of the Dominican Republic who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States.  Furthermore, **FERRERA** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

20.    **FERRERA** does not have any petitions pending with the United States Citizenship and Immigration Services.

**<u>CONCLUSION</u>**

21.    Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, a violation of Title 8, <u>United States Code,</u> Sections 1326(a) & (b)(2).

Luis Polo
Border Patrol Agent

Subscribed and Sworn before me pursuant to FRCP 4.1  at 11:34 a.m. by telephone, this 27th day of May 2026.

Honorable Héctor Ramos-Vega
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

5
